BAKER v. SAM'S CLUB

[161 N.C. App. 712 (2003)]

─────────────

JUDI BAKER, EMPLOYEE, PLAINTIFF v. SAM'S CLUB, EMPLOYER; AND CLAIMS MANAGEMENT, INC., CARRIER; DEFENDANTS

No. COA03-117

(Filed 16 December 2003)

1. Workers' Compensation— post-injury employment—necessary findings

A workers' compensation award was remanded for necessary findings about the suitability of plaintiff's post-injury employment by defendant.

2. Workers' Compensation— credibility and weight of evidence—Commission as sole judge

An assignment of error to Industrial Commission findings and conclusions was overruled where plaintiff contended that those findings and conclusions were contrary to the greater weight of the evidence. There was evidence to support the findings, and the Industrial Commission is the sole judge of the credibility and weight of the evidence.

Appeal by plaintiff from opinion and award entered 20 September 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 30 October 2003.

*Brumbaugh, Mu & King, P.A., by Leah L. King, for plaintiff-appellant.*

*Young, Moore & Henderson, P.A., by J.D. Prather and Michael W. Ballance, for defendant-appellees.*

BAKER v. SAM'S CLUB

[161 N.C. App. 712 (2003)]

HUDSON, Judge.

Plaintiff Judi Baker ("plaintiff") suffered knee, arm, shoulder and neck injuries when she slipped and fell while at work. Plaintiff's employer, Sam's Club ("defendant"), paid disability compensation and medical treatment costs related to the knee injury, but denied compensability for the arm, shoulder and neck problems. Plaintiff sought a hearing. Deputy Commissioner Wanda Blanche Taylor heard plaintiff's case in Wilmington on 31 March 1998, and entered her opinion and award 1 July 1999, awarding compensation only for permanent partial disability related to her knee injury. Plaintiff appealed the Deputy Commissioner's decision to the Full Commission, which reviewed her case 29 February 2000. On 20 September 2002, the Full Commission filed an opinion and award, again awarding plaintiff compensation only for the permanent partial disability rating related to her knee injury, pursuant to N.C. Gen. Stat. § 97-31 (1995). Plaintiff appeals, alleging error in the Commission's failure to make findings about the suitability of plaintiff's job following her injury. For the reasons discussed below, we reverse in part and remand to the Full Commission for findings about the suitability of plaintiff's post-injury position, and for appropriate conclusions based on those findings.

The findings of the Commission indicate that plaintiff was employed by defendant as an outside marketing representative earning an average weekly wage of $428.00. On 24 May 1996, in the course and scope of her employment, plaintiff slipped and fell while calling on Food Lion, a customer of defendant. Embarrassed by her fall, plaintiff attempted to complete the call, and then reported the accident to her supervisor immediately on returning from the field. Defendants accepted plaintiff's claim as a compensable injury by accident to her knee.

Plaintiff saw doctors at Cape Fear Occupational Health Services with anterior knee pain and reports of neck, arm and shoulder pain. Plaintiff eventually underwent knee surgeries on 11 November 1996 and 25 April 1997, and remained out of work until 7 September 1997. Plaintiff's physician released her to return to work with restrictions and recommended a primarily sedentary job without kneeling, stooping, squatting or bending, limited stair climbing and a lifting limit of twenty pounds.

Plaintiff returned to work with defendant 7 September 1997, taking a sit-down position at the Credit Applications desk. Plaintiff was able to perform this job, but the position was eliminated nationwide

after 25 December 1997. Defendant then transferred plaintiff to a demonstrator job, preparing food products for customers to taste while in the store. The position required plaintiff to load the necessary food and equipment onto a cart, push the cart to the demonstration location, prepare the food, serve it to customers, clean up and break down the demonstration station afterwards, and take out the accumulated trash.

In January 1998, while working as a demonstrator, plaintiff's knee collapsed as she stooped to place food into a microwave. Defendant then moved plaintiff to a non-cooking position, albeit one which still required standing, reaching and lifting. The Commission made the following finding:

11. The plaintiff testified that her job as a non-cooking demonstrator exceeded her physical limitations and light duty restriction. However, the plaintiff was offered help by the preparation people to assist her in tearing down and setting up for her demonstrations. There are generally two prep people available. The plaintiff declined this help indicating that she did not want to be a strain on the team and that if a 60-year-old prep person could do it, she could do it.

Testimony also showed that plaintiff felt embarrassed about her physical limitations and about being paid $11.40 per hour, when other demonstrators earned only $8.00 to $9.00 per hour. Plaintiff discussed her new position with her physician, who re-emphasized that she needed a sedentary job. Defendant's sales manager agreed that the job description presented for approval by plaintiff's physician was not accurate because it did not indicate that the job required lifting, squatting, kneeling and prolonged standing.

Following continued complaints of pain in her knee, arm, shoulder and neck, plaintiff's physician advised her that she would either need to quit work or work in pain. Plaintiff continued to be seen by physicians for the injuries to her knee, receiving a permanent partial impairment rating of seven percent to her left leg. Plaintiff also continued treatment for injuries to her right arm and shoulder, eventually being diagnosed with carpal tunnel and impingement syndromes. As a result of those injuries, plaintiff's physician removed her from work until they could be resolved surgically. Plaintiff remains out of work, contending that the demonstrator job assigned to her by defendants was not suitable given her restrictions.

**[1]** Plaintiff first contends that the Industrial Commission erred in failing to make findings of fact on the issue of suitability of the jobs to which she returned on 7 September 1997 following her injury. Because the Commission's opinion and award fails to make any findings about the suitability of plaintiff's post-injury jobs, as required for its determination, we remand for findings on that issue.

Prior to the hearing before the deputy commissioner, the parties stipulated that one of the issues before the Commission was whether plaintiff is "entitled to payment of temporary partial disability from September 9, 1997 to the present and continuing." Under the Workers' Compensation Act, disability is defined by a diminished capacity to earn wages, not by physical infirmity alone. N.C. Gen. Stat. § 97-2(9) (1995). Findings about the plaintiff's ability to earn wages in the competitive job market are necessary for the Commission to determine her earning capacity which, in turn, is necessary for a determination of entitlement to temporary partial disability under N.C. Gen. Stat. § 97-30. *Saums v. Raleigh Community Hosp.*, 346 N.C. 760, 765, 487 S.E.2d 746, 750 (1997). In order to determine whether the benefits for the seven percent rating are the more munificent remedy, the Commission must address the plaintiff's loss of wage-earning capacity, if any. *See Knight v. Wal-Mart*, 149 N.C. App. 1, 562 S.E.2d 434 (2002), *affirmed per curiam*, 357 N.C. 54, 577 S.E.2d 620 (2003).

"[A]n injured employee's earning capacity must be measured not by the largesse of a particular employer, but rather by the employee's own ability to compete in the labor market." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986). Thus, "the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiff's ability to earn wages." *Saums*, 346 N.C. at 764, 487 S.E.2d at 750. As our Supreme Court has explained:

> Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market. The rationale behind the competitive measure of earning capacity is apparent. If an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated.

*Peoples*, 316 N.C. at 438, 342 S.E.2d at 806; *see also Kisiah v. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 476 S.E.2d 434 (1996), *disc. review*

*denied* 345 N.C. 343, 483 S.E.2d 169 (1997). Thus, in order to make the necessary findings about plaintiff's earning capacity, the Commission must first make findings about whether the job offered by defendant to plaintiff accurately reflects her ability to earn wages in the competitive marketplace.

During the hearing, plaintiff presented medical records, and testimony from herself and from Michael Travelstead ("Travelstead"), a sales manager working for defendant, tending to show that jobs plaintiff held following her injury were not suitable given her medical restrictions. The defendants prepared job descriptions for the positions of credit membership table telemarketer and demonstrator, each of which plaintiff's physician approved for her. Plaintiff first undertook the job at the credit membership table, which she believed she was able to perform. However, when defendant eliminated that position 25 December 1997, plaintiff began work as a demonstrator. Travelstead testified that the job description he had prepared for plaintiff's physician did not accurately present the true physical requirements of the demonstrator position. In addition, plaintiff presented evidence that she was paid $11.40 per hour for her work, while other demonstrators earned only $8.00 to $9.00 per hour, and that defendant offered her assistance to permit her to perform this work.

The Commission failed to make any findings about the suitability of plaintiff's post-injury employment by defendant. Because these findings were necessary in order for the Commission to determine whether plaintiff was entitled to temporary partial disability compensation, and whether those benefits or the benefits for the rating were more generous, we remand to the Commission to address these factual issues, and then draw appropriate conclusions.

**[2]** Plaintiff next argues that the Industrial Commission erred in making findings and reaching conclusions that go against the greater weight of the evidence on the issue of whether plaintiff's arm, shoulder and neck injuries are compensable. Because the Commission is the sole judge of credibility of the witnesses and the weight to be given their testimony, we overrule this assignment of error.

We do "not have the right to weigh the evidence and decide the issue on the basis of its weight." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). Our "duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Id.* "[A]ppellate

courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Id.* at 116, 530 S.E.2d at 553.

The evidence before the Commission included the report of Dr. James A. Nunley, a physician who evaluated plaintiff at the Commission's request. Dr. Nunley's report stated that plaintiff's "neck injury is not related to her workmen's compensation fall nor is her shoulder injury." Because this evidence before the Commission supports its findings, they are conclusive on appeal, and these findings in turn support the Commission's conclusions regarding the causation of plaintiff's arm, shoulder and neck injuries.

Remanded for additional findings and conclusions.

Judges McGEE and CALABRIA concur.