***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Hearing Agreement dated October 22, 2003 as
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at the time of the alleged injury and/or occupational disease, the defendant employed three or more employees, and the employee-employer relationship existed between plaintiff and defendant.
2. Defendant was a duly qualified self-insured employer under the Workers' Compensation Act at all times relevant to these claims.
3. Plaintiff's average weekly wage may be determined from an accurate Industrial Commission wage chart, Industrial Commission Form 22, prepared by defendant.
4. Defendant admits that plaintiff reported an on-the-job incident occurring on February 25, 2002 but denies that such incident caused the condition for which plaintiff sought treatment with Dr. Whitmer.
5. The following records were admitted into evidence:
Page No. Description
6001-6008: All Forms filed with the Industrial Commission
 7001-7087: Defendant's Answers to Plaintiff's Interrogatories and Request for Production of Documents.
6. The following records were admitted into evidence as records maintained in the regular course of activity of the physician or institution identified:
Page No. Description
 1001-1002: Rocky Mount Orthopaedic and Sports Medicine, Dr. J. Greg Nelson, an orthopedic surgeon
2001-2028: Nash Urgent Care Center
3001-3062: Nash Hospitals, Inc.
 4001-4017: Carolina Regional Orthopaedics, Dr. Gilbert Whitmer, an orthopedic surgeon
 5001-5035: Concentra Medical Centers, Dr. Michael Landolf, an expert in Occupational Medicine
7. Plaintiff was temporarily totally disabled because of carpal tunnel syndrome beginning April 12, 2002.
8. The depositions of Gilbert G. Whitmer, M.D., Michael Landolf, M.D., and Greg Nelson, M.D, Mark Carrigan, Marie Van Cleve, Rob Simmons, and David Elliot were submitted and received into evidence.
9. The issues for decision include the following:
a. Whether plaintiff sustained a compensable injury by accident arising out of and in the course of employment on April 12, 2002.
b. Whether plaintiff is entitled to temporary total disability benefits from April 12, 2002 and continuing until such time as he is provided with suitable employment.
c. Whether plaintiff is entitled to permanent and total disability benefits and medical compensation if he is determined to have reached maximum medical improvement.
d. Whether plaintiff is entitled to further medical treatment for a medicals only claim for a back injury that he sustained on February 25, 2002.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for defendant for approximately nine months, during which time he worked as an order selector for almost seven months.
2. Plaintiff worked full-time as an order selector from July 2, 2001 until November 17, 2001. From November 17, 2001 until December 8, 2001, plaintiff worked part-time as an order selector and part-time as a forklift operator. From December 15, 2001 until February 2, 2002, plaintiff worked exclusively as a forklift operator. Plaintiff worked as an order selector from February 2, 2002 until February 25, 2002.
3. In an 8.5 hour shift, an order selector for defendant-employer spends approximately 5.2 hours pulling cases of product from storage racks to the pallet jacks. In addition to moving product, an order selector reads orders and labels, determines what items to pull, locates the particular item(s) to be pulled, inputs information into the computer, gets on and off the pallet jack, and drives the pallet jack to the appropriate location.
4. Order selectors have two fifteen minute breaks, a thirty minute lunch break, a fifteen minute pre-shift meeting at the start of every shift, and clean up time at the end of every shift.
5. When plaintiff operated a forklift, he would stand on the forklift, operate the throttle with his right hand, and steer it with his left hand to transport boxes to different locations.
6. On February 25, 2002 plaintiff sustained a low back strain as a result of a work-related injury when he was pulling a case of product off of a shelf.
7. On February 25, 2002, plaintiff reported the injury to his supervisor and presented to Dr. Michael Landolf, an expert in Occupational Medicine of Concentra Medical Centers. Plaintiff described the sudden onset of back pain as the result of lifting one box. Plaintiff denied radiating pain, paresthesias, sensory loss, numbness, and weakness. Dr. Landolf noted that plaintiff had negative bilateral leg raises and a normal gait and diagnosed him with a low back strain. Plaintiff was prescribed medication for pain and issued light duty work restrictions.
8. From February 26, 2002 until March 21, 2002, plaintiff worked in a light duty capacity. Plaintiff mostly performed clerical tasks. He did not lose any time from work as a result of this injury.
9. Plaintiff's low back strain as a result of the February 25, 2002 injury resolved by March 21, 2002 at which time plaintiff was released to return to work without restrictions.
10. Plaintiff returned to regular duty work as an order selector on March 22, 2002.
11. Plaintiff last worked for defendant on April 11, 2002.
12. On April 15, 2002, plaintiff presented to Kevin Pilecki, P.A. of Concentra Medical Centers, with complaints of low back pain. Plaintiff denied any new injury or specific initiating event and reported persistent low back pain that had become sharp and more severe over the past two (2) days.
13. Plaintiff also complained of upper back pain, which was new and unrelated to the February 25, 2002 work incident.
14. In April 2002, plaintiff experienced an arthritic flare up or progression of disc disease and did not suffer from a new injury or a work-related exacerbation of a preexisting condition.
15. By April 29, 2002, plaintiff's low back pain had resolved at which point Dr. Landolf again released plaintiff to return to work without restrictions.
16. Plaintiff never sought authorization for continued treatment thereafter with Dr. Landolf, did not request authorization from defendant to seek a second opinion or an independent medical examination of his back, and did not report continuing problems with his low back to defendant thereafter.
17. In April 2002, plaintiff began experiencing hand pain. He reported to his medical providers that his hand pain began around the first of the month.
18. Plaintiff never reported his hand complaints to any of his supervisors prior to April 11, 2002. None of plaintiff's supervisors observed plaintiff having difficulty performing his job because of his hands.
19. On April 18, 2002, plaintiff presented on his own to Dr. Greg Nelson, an orthopaedic surgeon with Rocky Mount Orthopaedics Sports Medicine Center, with complaints of a two week history of pain in his left palm. X rays and Tinel's were both negative. Dr. Nelson made no findings upon physical examination, which would support a diagnosis of carpal tunnel syndrome.
20. Dr. Nelson did not issue any work restrictions.
21. Dr. Nelson is familiar with the position of order selector based on personal observation of the position at a different warehouse.
22. On May 8, 2002 plaintiff sought treatment from Dr. Gilbert Whitmer, an orthopedist with Carolina Regional Orthopaedics in Rocky Mount. Dr. Whitmer diagnosed plaintiff with carpal tunnel syndrome of the left hand and subsequently performed a left carpal tunnel release.
23. Dr. Whitmer restricted plaintiff from returning to work because of his hand condition.
24. Plaintiff's employment with defendant was terminated on June 24, 2002 because of his failure to return to work or properly extend his medical leave period.
25. Plaintiff presented to Dr. Whitmer on February 6, 2003 with complaints of back pain and occasional radiating pain in the left buttock and upper posterior thigh. Straight leg raises produced low back pain. A subsequent MRI revealed arthritic changes and wear and tear changes not caused by an acute injury.
26. The low back condition for which plaintiff treated with Dr. Whitmer in February 2003 was different and completely unrelated to the February 25, 2002 on-the-job injury. In particular, (1) plaintiff's complaints of radiating pain to Dr. Whitmer in February 2003 were contrary to plaintiff's description of his symptoms in February, March, and April of 2002, (2) Dr. Whitmer's finding of positive straight leg raises on February 6, 2003 was inapposite to plaintiff's negative straight leg raise results the year before, and (3) Dr. Whitmer's notation of tenderness in the left lateral buttock and sciatic notch area differed from Dr. Landolf's earlier findings.
27. Plaintiff has not returned to Dr. Whitmer for treatment for his back since February 20, 2003.
28. Plaintiff did not present to Dr. Whitmer for his hand condition from March 13, 2003 until October 6, 2003. As of November 4, 2003, plaintiff was scheduled to undergo right carpal tunnel release. To date, that procedure has not been performed.
29. Plaintiff returned to work for a different employer in January 2003.
30. Dr. Nelson opined that plaintiff's hand condition was not the result of an occupational injury, and that neither the order selector position nor forklift operator position significantly contributed in causing plaintiff's carpal tunnel condition or the left-handed pain of which he complained when he presented to Dr. Nelson. Dr. Nelson also determined that plaintiff' job duties did not place him at an increased risk for developing carpal tunnel syndrome. Dr. Landolf expressed these same opinions.
31. Dr. Whitmer is of the opinion that the carpal tunnel syndrome for which he treated plaintiff was caused by his work activities as an order selector and that such job exposed him to a greater risk of developing such condition as compared to members of the public generally. Dr. Whitmer's opinion is based in part on a Work Smart Analysis prepared for defendant's Lexington, South Carolina Plant which does not accurately describe the position of order selector at defendant's Raleigh plant inasmuch as there are no one hundred-pound cases and there is no continual grasping or pinching of any item, regardless of weight, in the order selector position at the Raleigh plant.
32. The Full Commission gives greater weight to the opinions of Dr. Nelson and Dr. Landolf and than to the opinions of Dr. Whitmer.
33. The Full Commission finds that plaintiff's brief employment with defendant as an order selector and a forklift operator did not cause, nor significantly contribute in causing, the condition of his hands, diagnosed and treated by Dr. Whitmer as carpal tunnel syndrome.
34. The Full Commission finds that plaintiff's brief employment with defendant as an order selector and forklift operator did not expose him to a greater risk of developing the condition of his hands for which he treated with Dr. Whitmer, as compared to members of the public generally.
35. There have been no other carpal tunnel claims among order selectors at defendant's facility in at least twenty-nine (29) years.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on February 25, 2002. However, that injury, a low back strain, completely resolved by March 21, 2002. The low back condition for which plaintiff sought treatment with Dr. Whitmer was different and completely unrelated to the February 25, 2002 low back strain. An injury "shall mean only injury by accident arising out of and in the course of the employment" N.C. Gen. Stat. § 97-2 (2003). Smith v. Cabarrus Creamery Co., 217 N.C. 468,8 S.E.2d 231 (1940). "With respect to back injuries, however, where injury to the back arises out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned, `injury by accident' shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident." N.C. Gen. Stat. § 97-2(6) (2003). Events occurring contemporaneously, during a cognizable time period, and which cause a back injury constitute a specific traumatic incident. Richards v. Town of Valdese,92 N.C. App. 222, 225, 374 S.E.2d 116, 118 — 119 (1988). Aside from the February 25, 2002 incident which injury resolved, plaintiff did not suffer another specific traumatic incident arising out of and in the course of his employment or otherwise exacerbate the February 25, 2002 injury. As a consequence, plaintiff is not entitled to indemnity benefits or additional medical compensation for his low back condition.
2. The Industrial Commission is the sole judge of the credibility of witnesses and the weight to be given their testimony. Baker v. Sam's Club,161 N.C. App. 712, 589 S.E.2d 387 (2003).
3. The overwhelming weight of the competent and credible evidence establishes that plaintiff did not develop carpal tunnel syndrome as a result of his employment with defendant, and that his employment did not expose him to a greater risk of developing such condition as compared to members of the public generally. N.C. Gen. Stat. § 97-53(13). Phillips v.U.S. Air, 120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). Drs. Landolf's and Nelson's testimony is given greater weight. Holley v. ACTS,357 N.C. 228, 581 S.E.2d 750 (2003).
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits in I.C. File No. 270352 for additional medical treatment for his low back is denied in its entirety.
2. Plaintiff's claim for workers' compensation benefits in I.C. File No. 286012 for bilateral carpal tunnel syndrome is denied in its entirety.
3. Each side shall pay its own costs, except that defendant shall pay expert witness fees of $375.00 to Dr. Whitmer, $700.00 to Dr. Landolf and $600.00 to Dr. Nelson.
This the 29th day of June 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/llc